IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA

vs.                                                    Case Nos. 3:06cr73/LAC
                                                                 3:09cv330/LAC/EMT

RICHARD DAVID HUPPER
_____/

## ORDER, REPORT AND RECOMMENDATION

The motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 filed by Defendant Richard David Hupper ("Defendant") through counsel[1] has been referred to the undersigned magistrate judge for all proceedings, including preliminary orders, conduct of necessary evidentiary hearings, and the filing of a report and recommendation. *See* 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). This matter is now before the court on Defendant's amended motion to vacate (Doc. 33), the Government's response thereto (Doc. 53),[2] and Defendant's replies (Doc. 62, supplemental rely at Doc. 65). The court conducted an evidentiary hearing on January 5, 2011, to address Defendant's claim that he is actually innocent of the convicted offense of aggravated identity theft. After careful review of the docket, the evidence, and the arguments presented, it is the opinion of the undersigned that Defendant's § 2255 motion should be denied.

---

[1] Attorney Neal R. Lewis, Esq., has represented Defendant since the initiation of the criminal case and continues to represent him.

[2] The Government filed its response under seal because it was concerned the response might contain information to which Defendant would object as being too sensitive for public dissemination. As Defendant has now indicated that he has no objection to the Government's response being unsealed (*see* Doc. 65 at 4), the court shall direct the clerk to do so.

## I.     BACKGROUND

Defendant was convicted, pursuant to a Plea and Cooperation Agreement dated October 5, 2006, of one count of False Statement in Application and Use of Passport (Count One), in violation of 18 U.S.C. § 1542, and one count of Aggravated Identity Theft (Count Three), in violation of 18 U.S.C. § 1028A (*see* Docs. 15–18; 24–25).  Defendant was also charged in the indictment dated June 21, 2006, with one count of Misuse of Social Security Number (Count Two), in violation of 42 U.S.C. § 408(a)(7)(B) (Doc. 1).   The Government dismissed Count Two as part of the plea agreement (*see* Doc. 17).  The October 5, 2006, stipulated Factual Basis for Guilty Plea, which both Defendant and his attorney signed, states as follows:

> If this case proceeded to trial, the United States would prove by legal and competent evidence the following facts beyond a reasonable doubt:
>
> On 2 September 2005, Defendant RICHARD DAVID HUPPER, a United States citizen, applied for a United States Passport in the Warrington Station Post Office in Pensacola, Florida using the alias name "Aaron Bruce Gentry," birth date "09/21/1971" and place of birth "Harris, County, Texas."   He identified Social Security Number "XXX-XX-0637" as his own, and declared himself to be "unemployed."   He supplied both a mailing and permanent residential address in Pensacola, Florida (omitted herein).
>
> As evidence of his United States citizenship, HUPPER presented a Texas Birth Certificate in the name "Aaron Bruce Gentry."  As evidence of his identity, HUPPER presented a Florida Identification Card bearing his photograph in the name "Aaron Bruce Gentry."
>
> In mid-September 2005, the Fraud Prevention Manager at the Miami Passport Agency referred the defendant's passport application to the Department of State Diplomatic Security Service (DSS) for investigation, based largely on the fact that the Texas Birth Certificate HUPPER supplied to obtain his passport was completely fraudulent.  DSS confirmed with the Texas Bureau of Vital Statistics that there was no record of birth in Harris County or elsewhere in the State of Texas for "Aaron Bruce Gentry" on 21 September 1971.
>
> Continuing investigation revealed that the true "Aaron Bruce Gentry" born 21 September 1971[,] and to whom the Social Security Account number HUPPER recited was assigned[,] was born in Delaware and was a resident of the State of Missouri.  DSS located and interviewed Mr. Gentry.  He did not know HUPPER and did not authorize HUPPER to use his identity, his date of birth, nor his Social Security number to attempt to acquire a United States Passport.

In an effort to determine HUPPER'S true identity, DSS interviewed the occupant of the Pensacola residence (identity omitted herein) HUPPER declared in his passport application to be his own. She proved to be a lessee who did not know the person depicted in the passport application photograph, but who recognized the name "Aaron Bruce Gentry" as appearing on mail delivered to her residence, which mail she turned over to her landlady.

DSS subsequently traveled to Saraland, Alabama, and interviewed the widow of the man HUPPER declared as his "emergency point of contact" in his passport application (identity omitted herein). She recognized the photograph of "Aaron Bruce Gentry" as Defendant HUPPER, a friend of her now deceased husband who had resided with she [sic] and her husband for approximately four months in 2005. Her husband was deceased at the time HUPPER declared him to be his emergency point of contact in his Passport application.

Defendant HUPPER voluntarily and willfully made the false statements contained in his Passport application, with intent to secure the issuance of the United States Passport for his own use. At the time he made false statements in the Passport application, HUPPER knowingly transferred, possessed, and used a means of identification of another person without lawful authority; that is, the name, date of birth, and Social Security number of "Aaron Bruce Gentry."

The defendant and defendant's counsel, having read the foregoing stipulation of facts, agree that these facts are true and correct and are approved by signing this document.

(Doc. 16).

The presentence report, to which Defendant filed no objections, contains essentially the identical statement. Likewise, the transcript of Hupper's October 5, 2006, change of plea hearing contains the same statement, virtually verbatim, as well as Defendant's admission that the facts in the statement were true and that he had committed the acts alleged by the Government (Doc. 52 at 8–11). The Government has also attached to its response to Defendant's amended § 2255 motion the redacted report of a debriefing interview that Federal Bureau of Investigation ("FBI") Special Agent Stacy Lee Moore conducted with Defendant on October 5, 2006. The report reflects Defendant's statements that through contacts in a motorcycle gang he was able to secure the name, date of birth, and Social Security number he later used to apply for the United States passport. Defendant initially attempted to obtain the birth certificate and Social Security number of a gang member whom he knew personally, but the gang member refused to provide them to Defendant;

instead, he suggested that Defendant contact another gang member who lived in Alabama. Defendant did so, and he ultimately received the documents he desired from this individual, in exchange for Defendant's agreeing to give him a 2000 Harley-Davidson motorcycle. During his interview with the FBI, Defendant provided the names of his contacts and where they and Defendant met, as well as information about the gang's illegal activities.

On January 26, 2007, the district court sentenced Defendant to a term of ten (10) days of imprisonment as to Count One, with credit for time served, and a mandatory term of twenty-four (24) months of imprisonment as to Count Three, to run consecutively to the term imposed in Count One (Docs. 25, 29). The Government did not request, and Defendant has not received, a reduction in sentence pursuant to U.S.S.G. § 5K1.1 or Fed. R. Crim. P. 35. Defendant did not file a direct appeal of his conviction or sentence.

In his instant amended § 2255 motion, which is signed both by counsel and Defendant, Defendant alleges that he is actually innocent of the charge of aggravated identity theft (Doc. 33 at 6–9).[3] In support of his claim of actual innocence, Defendant relies on Flores-Figueroa v. United States, ___ U.S. ____, 129 S. Ct. 1886, 173 L. Ed. 2d 853 (2009), in which the Supreme Court construed the knowledge element of § 1028A. Defendant in this case asserts that he in fact did not commit the offense of aggravated identity theft because he did not know that the identification he used when he attempted to obtain a United States passport belonged to a "real" person, a position from which he has not deviated. Indeed, in his amended motion Defendant states repeatedly that he consistently advised FBI agents who interviewed him from 2005 to 2008 about this case (and his case in the Southern District of Florida) that he was "unaware" at that time that Gentry was an actual individual (Doc. 33 at 6, 7, 8). Defendant asks that he therefore be resentenced to a non-consecutive, non-mandatory sentence for the offense he acknowledges he did commit, simple identity theft (id. at 10).

The Government initially responded to Defendant's § 2255 motion by filing a motion to dismiss on the ground the motion was untimely because it was filed more than one year after

---

[3] Counsel initially filed a § 2255 motion for Defendant without using a court-approved form (Doc. 30). The court therefore directed him to file an amended motion on the appropriate form (Doc. 32). Counsel complied by filing the instant motion (Doc. 33), which is the operative motion. The two motions contain virtually identical information.

February 12, 2007, the date on which Defendant's conviction became final (Doc. 35). On the undersigned's Report and Recommendation (Doc. 41), the district court denied the Government's motion without prejudice to its filing a renewed motion to dismiss addressing the retroactivity and effect of Flores-Figueroa on the timeliness of Defendant's motion (Doc. 43). In its instant response (Doc. 53), the Government concedes that Flores-Figueroa is retroactively applicable on collateral review[4] and that Defendant's motion is timely under § 2255(f)(3). Nevertheless, the Government argues that Defendant's claim is procedurally barred because it was not raised on direct appeal, and he has not shown cause for failing to raise it and actual prejudice or actual innocence. Nor has Defendant shown, as he must, that his actual innocence extends to the more serious offense charged in Count II, misuse of a Social Security number, which was dismissed as part of the plea agreement. For these reasons, and because Defendant makes nothing more than conclusory allegations unsupported by specific, credible evidence, the Government argues that Defendant's § 2255 motion should be denied.[5]

In his initial reply to the Government's response (Doc. 62, duplicates at Doc. 58, 60), Defendant argues there is no evidence that at the time the offense was committed he was aware that Aaron Bruce Gentry was a real person; rather, Defendant contends that he did not become aware that Mr. Gentry was an actual person until the Government so advised him after the commission of the offenses charged in the June 21, 2006, indictment.[6] Thus, Defendant submits, at the time of the

---

[4] The Government does not cite any legal authority in support of its concession, but the court notes that numerous courts have concluded that Flores-Figueroa should be applied retroactively. *See, e.g.,* United States v. Berry, 369 Fed. App'x 500, 502 (4th Cir. 2010); Arellano v. United States, 2010 WL 3504801 (M.D.N.C. 2010); Soto v. United States, 2010 WL 148235 (S.D. Fla. 2010); United States v. Venancia-Dominguez, 660 F. Supp. 2d 717 (E.D. Va. 2009); and United States v. Fernandez-Cruz, 2009 WL 3488352 (D. Md. 2009). Based on this authority, and for the purpose of this Report and Recommendation, the court accepts that Flores-Figueroa is retroactively applicable on collateral review.

[5] The Government also notes that in the United States District Court for the Southern District of Florida, Case No. 08-CR-20410-PCH, Defendant was convicted of knowingly providing material support to a foreign terrorist organization from December 2004 through December 2006, in violation of 18 U.S.C. § § 2339A(b) and (B)(a)(1) (Doc. 53 at 13, n.3). He was sentenced to forty-six months imprisonment, to run concurrent with the term of imprisonment imposed in this district.

[6] In its August 27, 2010, order the court directed that "[i]n filing his reply [to the Government's response], Defendant shall provide a full explanation for the basis for his apparent assertion that, if afforded relief in this case, he would be eligible for immediate release." Defendant filed the reply to this instruction separately (Doc. 61). In part, Defendant argues that "[s]hould defendant be re-sentenced and receive full credit from the filing of the information to

offense he did not have the requisite knowledge, as outlined in Flores-Figueroa, to commit aggravated identity theft; moreover, he asserts, had case law consistent with Flores-Figueroa been available at the time of his plea, he would not have pleaded guilty to Count III. Following receipt of Defendant's reply, the court directed Defendant to file a supplemental reply addressing more particularly his assertion that he had satisfied the actual innocence and cause and prejudice standards (Doc. 64). In his supplemental reply (Doc. 65), Defendant apparently concedes he cannot show his actual innocence of Count II, but submits that he need not as Count II is not a "more serious charge" than Count III. Defendant continues to maintain his actual innocence of Count III, citing United States v. Grajeda-Gutierrez, 372 Fed. App'x 890 (10th Cir. 2010) (reversing conviction for aggravated identity theft because, as the government conceded, there was insufficient evidence for jury to conclude that defendant knew "the social security number and name she was using belonged to a real person . . . ") (citation and internal quotation marks omitted). Defendant also states that should cause be an issue in this case, any failure to assert the appropriate objection prior to sentencing should be attributed to the ineffective assistance of his counsel, not any waiver by Defendant (id. at 4–5).

The January 5, 2011, evidentiary hearing addressed whether Defendant knew that the means of identification which he unlawfully possessed or used when making his passport application did in fact belong to another person. To refute Defendant's representations in his amended motion that he repeatedly told the FBI agents who interviewed him that he did not know Mr. Gentry was an actual individual, the Government introduced into evidence seven sealed, unredacted reports of confidential FBI interviews conducted from 2005 to 2008.[7] Without objection by defense counsel,

---

his sentencing in the Southern District with the resulting credit for an additional 6 months and his additional credits for good conduct, education, etc., defendant would be immediately eligible for his transfer to Capital Pavilion halfway house in Harrisburg, Pennsylvania, the halfway house to which he is assigned." (Id. at 2–3).

[7] The Government's exhibits regarding these interviews are:
Government's Exhibit 1—interview conducted on October 5, 2006, by Special Agent Stacy Lee Moore (unredacted version of October 5, 2006, interview that was previously provided by the Government in redacted form with its response to Defendant's amended § 2255 motion);
Government's Exhibit 2—conducted by Special Agent Moore on October 5, 2006;
Government's Exhibit 3—conducted by Special Agent Timothy D. Lynch on December 7, 2005;
Government's Exhibit 4—conducted by Special Agent Erik B. Sullenberger on December 18, 2006;
Government's Exhibit 5—advice of rights form and Defendant's post-polygraph statement dated December 19, 2006;

the court admitted the Government's exhibits into evidence, under seal, for in camera inspection. The court has carefully reviewed the exhibits and, as the Government represents, none of them includes a statement by Defendant that he did not know at the time of his offense that Aaron Bruce Gentry was an actual person. Nor, as Defendant submits, do the documents include a statement suggesting that he knew that Mr. Gentry was a real person.

Also at the hearing the Government called FBI Special Agents Moore, Sullenberger, and Mastrianni to testify. Special Agent Moore testified that during the October 5, 2006, interview Defendant explained that he wanted to obtain a passport in another person's name because he wished to travel to Israel but had previously been denied entry. Defendant had initially asked another individual to permit him to use his Social Security number and birth certificate to obtain a Florida identification card and, ultimately, a United States passport, but the individual refused the request. This individual assisted Defendant, however, in locating another person who did provide a Social Security card that Defendant could use to apply for a State of Florida identification card and later a United States passport, in exchange for Defendant's giving the second individual a Harley-Davidson motorcycle. When Agent Moore asked Defendant during the interview if he knew Mr. Gentry, whose information Defendant had used, Defendant replied that he had no prior knowledge of Mr. Gentry. Agent Moore had no reason to believe that Defendant and Gentry had ever met.

Special Agent Sullenberger testified about his December 18, 2006, interview of Defendant and two passports that had been issued in Defendant's name. Special Agent Sullenberger stated that Defendant had a passport in his own name with an expiration date of June 23, 2007, which was marked with a yellow flag to indicate frequent travel to the Middle East and also a stamp noting that Defendant had been denied entry into Israel on May 3, 2005. Defendant also had a passport that was issued by the U.S. Embassy in Amman, Jordan, on March 8, 2005, that did not contain the denial of entry to Israel. Defendant did not tell Agent Sullenberger that he did not know Mr. Gentry was a real person; the subject in fact did not come up as Defendant was only asked about his activities in the Middle East. Nor, according to Special Agent Sullenberger, was there any mention of Mr. Gentry during the interview with Defendant after his December 19, 2006, polygraph or June 25,

---

Government's Exhibit 6—conducted by Special Agent Adam Mastrianni on March 11, 2008; and Government's Exhibit 7—conducted by Special Agent Sullenberger on June 25, 2008.

2008, interview, at which Special Agent Mastrianni was also present. Special Agent Mastrianni testified that he participated in interviews with Defendant on March 11, 2008, and June 25, 2008; at neither interview did Defendant state that he did not know that Mr. Gentry was an actual person; according to Special Agent Mastrianni, he had no real interest regarding this issue and he never discussed it with Defendant.

Defendant also testified at the evidentiary hearing. Defendant acknowledged the interviews he had with the FBI agents who testified and stated that at none of the interviews was he ever asked if he knew Aaron Bruce Gentry was a real person. On cross examination, when presented with statements in his initial motion and amended motion to vacate that he had consistently maintained to the FBI agents who interviewed him that he did not know that Aaron Bruce Gentry was a real person, Defendant conceded that such broad representations were not accurate. Rather, he claimed that he had only made such a statement to Special Agent Moore; Defendant then acknowledged that Special Agent Moore had asked him if he knew Mr. Gentry, and Defendant told him he did not. Defendant testified that he was never asked if he knew Mr. Gentry was a real person. Defendant went on to state that he never claimed that he did not know that Mr. Gentry was a real person; he only said he did not know him and did not know if he was a real person or not. In response to questions from the court, Defendant stated that he believed that the testimony of each of the three FBI agents accurately represented what he had stated to them during the interviews. He repeated that he was never asked if Mr. Gentry was a real person but rather he was asked if he knew him and that he had responded "no" to the latter question. Defendant stated that he did not learn until sometime during his incarceration that Mr. Gentry was a real person.

The court did not invite the parties to provide any supplemental briefing after the hearing, and none was filed, but the Government submitted a Notice of Supplemental Authority (Doc. 69), in which it cites United States v. Gomez-Castro, 605 F.3d 1245 (11th Cir. 2010); United States v. Holmes, 595 F.3d 1255, 1256–58 (11th Cir. 2010); and United States v. Iyamu, 2010 WL 3279156 (11th Cir. 2010).

## II.    LEGAL STANDARD

The grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited. A defendant is entitled to relief under § 2255 if the court imposed a sentence that (1)

violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. 28 U.S.C. § 2255; Thomas v. Crosby, 371 F.3d 782, 811 (11th Cir. 2004); United States v. Phillips, 225 F.3d 1198, 1199 (11th Cir. 2000). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). A criminal defendant who fails to raise an available issue on direct appeal will be procedurally barred from raising the claim in a § 2255 motion, Mills v. United States, 36 F.3d 1052, 1055 (11th Cir. 1994), absent a showing of either: (1) cause and prejudice or (2) actual innocence. Bousley v. United States, 523 U.S. 614, 622, 118 S. Ct. 1604, 140 L. Ed.2d 828 (1998) (indicating that actual innocence is not itself a substantive claim, but rather serves only to lift procedural bar); United States v. Frady, 456 U.S. 152, 167-70, 102 S. Ct. 1584, 71 L. Ed.2d 816 (1982). To demonstrate cause, a defendant must show that "some objective factor external to the defense" impeded his ability to raise the issue on direct review. Coleman v. Thompson, 501 U.S. 722, 753, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991). "Actual prejudice" is prejudice that impacts constitutional or fundamental rights. Frady, 456 U.S. at 166 (citation omitted).

"To establish actual innocence, petitioner must demonstrate that, 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.'" Bousley, 523 U.S. at 623 (quoting Schlup v. Delo, 513 U.S. 298, 327–28, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995)). The Bousley Court further explained that "'actual innocence' means factual innocence, not mere legal insufficiency." Id. Where a defendant has pleaded guilty, and thus there is no trial record or jury verdict, at an evidentiary hearing on the claim of actual innocence, "the Government must be permitted to introduce any admissible evidence of Appellant's guilt, whether or not that evidence was presented in the plea colloquy, or even would have been offered . . . ." United States v. Montano, 398 F.3d 1276, 1285 (11th Cir. 2005) (citing Bousley, 523 U.S. at 623). Furthermore, in a plea scenario, the defendant must demonstrate actual innocence not only as to the offense(s) of conviction, but also as to "more serious charges" that have been dismissed or dropped in the course of plea bargaining. See Bousley, 523 U.S. at 624 ("In cases where the government has forgone more

serious charges in the course of plea bargaining, [the] petitioner's showing of actual innocence must also extend to those charges.").

## III. DISCUSSION

The court first addresses whether Defendant has shown the existence of cause and prejudice that would excuse his procedural default in failing to file a direct appeal. A § 2255 movant cannot establish cause for his failure to raise an issue on direct appeal if the reason for his failure was that it would have been futile for him to do so under then-existing precedent: "[F]utility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time." Bousley, 523 U.S. at 623 (quotations omitted); *see also* Engle v. Isaac, 456 U.S. 107, 130, 102 S. Ct. 1558, 71 L. Ed. 2d 783 (1982) ("the futility of presenting an objection . . . cannot alone constitute cause for a failure to object at trial."). In order to establish cause based on a change in law Defendant must show that his claim "is so novel that its legal basis was not reasonably available to counsel." Reed v. Ross, 468 U.S. 1, 16, 104 S. Ct. 2901, 82 L. Ed. 2d 1 (1984). In this case, by the time Defendant entered his plea in October 2006 and he was sentenced in January 2007, a number of courts had considered the knowledge requirement of an aggravated identity theft offense. At least one district court had concluded that the statute requires that the defendant knew the identification actually belonged to another person, *see* United States v. Beachem, 399 F. Supp. 2d 1156 (W.D. Wa. 2005) (aggravated identity theft statute required Government to prove that defendant knew that Social Security numbers she used belonged to an actual person), while other federal courts, including one circuit court, had concluded otherwise. *See* United States v. Montejo, 442 F. 3d 213 (4th Cir. 2006) (holding that aggravated identity theft statute did not require that defendant have known that identification actually belonged to another person), and United States v. Contreras-Macedas, 437 F. Supp. 2d. 69 (D. D.C. 2006) (same). Because the issue of knowledge necessary to prove the offense of aggravated identity theft was being debated in the courts at the time of his conviction and sentencing, Defendant cannot show that the issue was so novel that its legal basis was not reasonably available to his counsel; accordingly, Defendant cannot establish cause for his failure to raise this claim on appeal.[8] Defendant's having failed to establish cause to

---

[8] Defendant briefly suggests in his supplemental reply (*see* Doc. 65 at 4–5) that his counsel's ineffective assistance might establish cause for his default, under the two-part standard articulated by the Supreme Court in

excuse his procedural default, the court need not proceed to considering whether Defendant has shown that prejudice exists. *See* Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010 (stating that "[i]t is well established that if the petitioner fails to show cause, we need not proceed to the issue of prejudice.") (citing McCleskey v. Zant, 499 U.S. 467, 502, 111 S. Ct. 1454, 1474, 113 L. Ed.2d 517 (1991)).

The court now turns to Defendant's argument that he can overcome the procedural default in this case because he is actually innocent of the offense of aggravated identity theft. As explained below, the court concludes that Defendant has failed to satisfy the actual innocence exception to the procedural bar rule because he is unable to show that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him of aggravated identity theft. *See* Bousley, 523 U.S. at 623.

In United States v. Holmes, 595 F.3d 1255 (11th Cir. 2010), the Eleventh Circuit recently applied Flores-Figueroa in affirming a defendant's conviction of aggravated identity theft under 18 U.S.C. § 1028A(a)(1). The Holmes court held that evidence which showed the defendant had repeatedly subjected her false identity documents to governmental scrutiny and successfully used the identity documents to obtain a driver's license, identification card, line of credit, and passport was sufficient for a reasonable jury to find the defendant knew the documents belonged to a real person. *Id.* at 1258. According to Holmes, "a reasonable jury could have found that [the defendant] knew at least that the federal and state governments routinely obtain an applicant's identity to verify the authenticity of that identity." *Id.* "That knowledge can be inferred reasonably based on ordinary human experience for which no special proof is required; a trier of fact can rely on common sense." United States v. Gomez-Castro, 605 F.3d 1245, 1249 (11th Cir. 2010). In Gomez-Castro, the

---

Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Under Strickland, to establish a viable ineffective assistance of counsel claim, a defendant must show that: (1) his attorney's performance was deficient; and (2) the deficient performance prejudiced his defense. Given that the Supreme Court issued its decision in Flores-Figueroa in May 2009, Defendant is unable to demonstrate that his counsel's performance in failing to raise the issue of knowledge when Defendant was sentenced in January 2007, or more than two years earlier, "fell below an objective standard of reasonableness under prevailing professional norms." Strickland, 466 U.S. at 687. As Defendant cannot establish the deficient performance prong of the Strickland standard, the court need not consider the prejudice prong. *See* Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000) (court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa).

Eleventh Circuit clarified that Holmes "establishes that the government can rely on circumstantial evidence about an offender's misuse of a victim's identity to prove the offender knew the identity belonged to a real person." *Id.*; *but see* United States v. Gaspar, 344 F. App'x 541, 546–47 (11th Cir. 2009) (in reversing aggravated identity theft conviction, concluding there was no direct evidence that defendant knew birth certificate belonged to a real person at the time she applied for a passport).  The Gomez-Castro court also noted that "[b]oth the circumstances in which an offender obtained a victim's identity and the offender's later misuse of that identity can shed light on the offender's knowledge about that identity."  650 F.3d at 1248.

The undisputed facts of this case, as established in the stipulated Factual Basis for Guilty Plea,[9] Government's Exhibit 1, and Special Agent Moore's hearing testimony, reflect that Defendant successfully used Mr. Gentry's Social Security number (and date of birth) to obtain a State of Florida identification card.  While the factual proffer and the other evidence do not reflect an express acknowledgment by Defendant that he knew Mr. Gentry was an actual person, the court concludes that, based on circumstantial evidence, a reasonable jury could have determined that Defendant in fact had the requisite knowledge to support an aggravated identity theft conviction.  *See* Holmes, 595 F.3d 1255; *see also* Gomez-Castro, 605 F.3d at 1248.

Defendant willingly subjected Mr. Gentry's Social Security number to scrutiny by the government, which conduct provides circumstantial evidence of his knowledge that Mr. Gentry was an actual person.[10]  As in Holmes, where the defendant's willingness to subject the Social Security card to government scrutiny was sufficient to establish that she knew the card belonged to a real person, Defendant's willingness to submit documents in Mr. Gentry's name for government scrutiny on two occasions—once when applying for the State of Florida identification card and again when applying for the United States  passport—would permit a reasonable jury to conclude he knew the

[9]  As outlined above, Defendant specifically acknowledged in the Factual Basis for Guilty Plea that "[a]t the time he made false statements in the Passport application, HUPPER knowingly transferred, possessed, and used a means of identification of another person without lawful authority; that is, the name, date of birth, and Social Security number of 'Aaron Bruce Gentry.'" (Doc. 16) (emphasis added).  Defendant adopted these statements as true, under oath, during his Rule 11 plea colloquy before the district court (Doc. 52 at 11).  Thus Defendant admitted that the identification information belonged to another person.

[10]  That the birth certificate represented to be Mr. Gentry's turned out in fact not to be authentic does not alter this conclusion.

documents belonged to a real person. Furthermore, Defendant was successful in using Mr. Gentry's Social Security number to obtain a State of Florida identification card, which is sufficient to establish circumstantially that Defendant knew the number belonged to an actual person when he subsequently applied for a United States passport using that identification card. A reasonable jury could find, based on common sense and experience, that the state government routinely "obtain[s] an applicant's identity to verify the authenticity of that identity." Holmes, 595 F.3d at 1258 (where a defendant's use of another person's Social Security card and birth certificate to apply for a driver's licence, identification card, and passport was probative evidence that the defendant knew the documents belonged to a real person). Moreover, in viewing the evidence that Defendant originally attempted to obtain the identification documents of a real person whom he knew personally in order to apply for a passport in a name other than his own—an effort which failed when the individual refused to provide the documents—a reasonable jury could conclude that Defendant had endeavored and desired to obtain the documents of an actual person. This too could constitute circumstantial evidence in support of a finding that Defendant knew the documents he was purchasing belonged to an actual person. *But see* Gaspar, 344 F. App'x at 546 (holding that it could not be inferred that the defendant knew the birth certificate she purchased from a co-worker belonged to a real person simply from the fact that the defendant would have preferred that the identification was real in order for the document to be better able to withstand governmental scrutiny). Also, the fact that Defendant paid for the documents with a presumably valuable motorcycle is circumstantial evidence that he knew the person whose documents he was purchasing was an actual person. A reasonable jury could infer that Defendant would not have been willing to pay such a substantial amount unless he believed Mr. Gentry was a real person and the Social Security number involved was authentic. *See* Gomez-Castro, 605 F.3d at 1249 (purchasing birth certificate and Social Security card in another person's name for $2,500 and using those documents to obtain a driver's license, a benefits card, two credit cards, and a bank card was enough to support a finding that the defendant knew the identity belonged to a real person). *See also* De La Rosa v. United States, 2010 WL 4064807 (S.D. Fla. 2010) (denying motion to vacate aggravated identity theft conviction).[11] Defendant's claim that

---

[11] As noted above, Defendant relies on United States v. Grajeda-Gutierrez, 372 Fed. App'x 890 (10th Cir. 2010, arguing that, as the Tenth Circuit concluded in Grajeda-Gutierrez, there is insufficient evidence of knowledge in

he did not know for certain that Mr. Gentry was a real person until sometime after he was incarcerated is supported only by his current bare assertion to that effect and is insufficient to obtain relief under § 2255.[12] *See* Caderno v. United States, 256 F.3d 1213, 1217 (11th Cir. 2001) (noting that habeas relief is not warranted when claims are merely conclusory allegations unsupported by specifics); *see also* United States v. Yizar, 956 F.2d 230, 234 (11th Cir.1992) (stating that a petitioner must set forth sufficient allegations to demonstrate that he is entitled to his requested relief).

Even if Defendant was "unaware" that the identification information he used was not that of an actual person, as Defendant submits is the case, the court concludes that this alleged lack of knowledge should be deemed the result of deliberate ignorance. The Eleventh Circuit has "consistently recognized deliberate ignorance of criminal activity as the equivalent of knowledge." United States v. Arias, 984 F.2d 1139, 1143 (11th Cir. 1993). The Eleventh Circuit has noted that "[t]he deliberate ignorance [pattern jury] instruction is based on the alternative to the actual knowledge requirement at common law that if a party has his suspicions aroused but then deliberately omits to make further enquiries, because he wishes to remain in ignorance, he is deemed to have knowledge." United States v. Rivera, 944 F.2d 1563, 1570 (11th Cir. 1991). In the instant case, Defendant has admitted that he received and used a Social Security number he knew was not his own, submitting he did not know for certain at the time of the alleged offense whether or not the number belonged to an actual person. Defendant nevertheless chose to be deliberately ignorant as to whether the owner of the Social Security number was an actual person and proceeded to use the

---

the instant case that the Social Security number the Defendant used belonged to a real person. As set forth above, however, the Eleventh Circuit has made clear in the recent cases of Holmes and Gomez-Castro that circumstantial evidence—precisely of the sort present in this case—is sufficient to establish that a defendant knew the identity belonged to a real person. Gomez-Castro, 605 F.3d at 1249.

[12] The undersigned notes that during Defendant's testimony at the evidentiary hearing his attorney did not directly ask Defendant whether he knew Aaron Bruce Gentry was a real person at the time he applied for a passport in Mr. Gentry's name. Rather, his attorney asked Defendant only one question, as follows: "During those interviews [with agents of the FBI] were you ever asked [the] question, 'D[id] you know if Aaron Bruce Gentry was a real person?'" Moreover, Defendant did not testify that he did not know Mr. Gentry was a real person, as he has alleged in his § 2255 motion. Rather, Defendant's testimony—like his lawyer's question—focused mainly on Defendant's assertion that he was never asked whether he knew Mr. Gentry was a real person. Thus, despite having the opportunity to support the bare assertion in his motion, which assertion prompted the need for an evidentiary hearing to resolve Defendant's motion, Defendant failed to do so.

number for fraudulent purposes. Such deliberate ignorance may be deemed the equivalent of knowledge.

For all of the foregoing reasons, the court concludes that Defendant has failed to establish that he is factually innocent of Count III. In short, Defendant has not shown that it is more likely than not that no reasonable juror would have convicted him of aggravated identity theft had he elected to go to trial rather than plead guilty.[13] Defendant's motion pursuant to § 2255 therefore should be denied.

Accordingly, it is **ORDERED**:

The clerk shall unseal the Government's response to the amended motion to vacate (Doc. 53).

And it is respectfully **RECOMMENDED**:

That the amended motion to vacate, set aside, or correct sentence (Doc. 33) be **DENIED**.

At Pensacola, Florida, this 14<u>th</u> day of January 2011.


*/s/ Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon the magistrate judge and all other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**

---

[13] In light of this conclusion, the court need not consider whether Count II (misuse of a Social Security number, which was dismissed as part of the plea agreement) is a "more serious" offense than Count III or whether Defendant is actually innocent of Count II.

Case Nos. 3:06cr73/LAC; 3:09cv330/LAC/EMT